**Charles A. RHODES, Jr. and Judy Valentine Rhodes**

v.

**J.P. SAUER & SOHN, INC., Hawes Firearm Co., and Sig Arms, Inc.**

**No. CIV.A.1:00–0160.**

United States District Court, W.D. Louisiana, Alexandria Division.

April 4, 2000.

Richard E. Starling, Jr., Ball, LA, for plaintiffs.

David R. Frohn, Robin A. Anderson, Frohn & Thibodeaux, Lake Charles, LA, for defendants.

### RULING

LITTLE, Chief Judge.

Before the court is defendant Sig Arms Sauer GmbH's ("Sauer")[1] motion to dismiss pursuant to Rule 12(b)(5)[2] of the

---

**1.** Sig Arms Sauer GmbH was formerly known as J.P. Sauer & Sohn, Inc. The plaintiff sued Sauer under this Sig Arms Sauer GmhB under their former name.

**2.** Rule 12(b)(5) provides for dismissal of a claim if service of process was not timely effected in accordance with Rule 4. Sauer's request for dismissal under Rule 12(b)(4) in

Federal Rules of Civil Procedure, or alternatively to quash service under Federal Rules of Civil Procedure 4(f)(1). For the reasons that follow we GRANT the motion to quash but DENY the motion to dismiss.

## I. Factual Background

Plaintiffs Charles A. Rhodes, Jr. and Judy Valentine Rhodes filed a petition for damages in the 35th Judicial District Court for Grant Parish on 24 November 1999 under the Louisiana Products Liability Act, La.Rev.Stat. Ann. § 9:2800 *et seq.* The plaintiffs contend that Charles Rhodes was injured when a gun manufactured by the defendants malfunctioned and discharged. The defendants timely removed to this court based on diversity of citizenship jurisdiction, 28 U.S.C. § 1332.

On 14 February 2000, Sauer filed this motion, claiming that it had not been served properly. Sauer is organized under the laws of the Federal Republic of Germany, and has its principal place of business in Eckernford, Germany. Plaintiffs attempted to serve a copy of their petition for damages on Sauer via Federal Express, without German translations. Sauer contends that this method of service failed to comport with the requirements of Rule 4(f)(1) of the Federal Rules of Civil Procedure. Sauer therefore asks that we dismiss the plaintiffs' suit against it based on improper service of process.

## II. Analysis

■ Pursuant to Rule 12(b)(5), upon motion of the defendant, this court may dismiss an action for insufficiency of process. In order to achieve proper service for purposes of Rules 12(b)(5), a party must follow the requirements of Rule 4 of the Federal Rules of Civil Procedure. Rule 4(f) of the Federal Rules of Civil Procedure governs service on individuals in a foreign country. Service on a corporation of a foreign country that has not waived proper service may be effected "by

any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad if Judicial and Extrajudicial Documents." Fed. R.Civ.P. 4(f)(1). The Hague Convention is a multilateral treaty signed by both the United States and Germany that provides "a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988); *see* Hague Convention on the Service Abroad of Judicial and Extradjudicial Documents, Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163, *reprinted at* 28 U.S.C. Federal Rules of Civil Procedure, Rule 4. If the Hague Convention is applicable, its provisions preempt inconsistent methods of service prescribed by state law. *See Schlunk,* 486 U.S. at 699, 108 S.Ct. at 2107–08.

Pursuant to Article 21 of the Hague Convention, each signatory nation may retain or reject certain general provisions and enact specific requirements for valid service within that country. *See* 28 U.S.C. Federal Rules of Civil Procedure, Rule 4, art. 21. Articles 2 and 3 of the Hague Convention require signatory countries to designate a Central Authority to receive requests for service, and require that a request for service of judicial documents and the documents to be served be forwarded to the Central Authority. *See id.* arts. 2–3. Although Article 10 of the Hague Convention contemplates service by mail, Germany has specifically rejected the validity of this mode of service. *See id.* n. 7a (setting forth specifics of service of process in the Federal Republic of Germany). Article 5 allows the signatory State to require that the document to be served be translated into the official language of

this case was inappropriate. Rule 12(b)(4) is used to dismiss claims that deal with defects in the form of summons. *See* 5A Wright &

Miller, Federal Practice & Procedure, § 1353, at 276 (1990).

the State. *See id.* art. 5. Germany is one of the countries that has such a requirement. *See id.* n. 7a (setting forth specifics of service of process in Germany).

Sauer contends that the service attempted here did not comport with the requirements of the Hague Convention in that the plaintiffs failed to (1) use and serve the necessary forms promulgated by the Hague Convention; (2) properly transmit the papers to the appropriate Central Authority; (3) translate the citation and petition into German; and (4) obtain service of the papers by the Central Authority. Plaintiffs concede that they did not translate the summons into German, the official language of Germany. Further, in their opposition to Sauer's motion to dismiss, they do not refute Sauer's assertion that they failed to transmit properly their complaint to the appropriate Central Authority in Germany or obtain service through the designated Central Authority.

Foreign defendants are permitted to "insist on service pursuant to the Hague Convention." *Sheets v. Yamaha,* 891 F.2d 533, 536 (5th Cir.1990). Since the plaintiffs did not comply with the service and translation requirements of the Hague Convention as adopted by the Federal Republic of Germany, they failed to effectuate valid service on Sauer under Rule 4(f)(1). The plaintiffs argue, however, that this court has jurisdiction over Sauer because they properly served Sig Arms, Inc. ("Sig"), Sauer's domestic subsidiary, and Louisiana law allows service of process on a foreign corporation by serving its domestic subsidiary.

The plaintiffs cite *Schlunk* for the proposition that a plaintiff may serve a corporation in a foreign country by serving its domestic subsidiary. *See Schlunk,* 486 U.S. at 707, 108 S.Ct. at 2112. The plaintiffs have misapplied the facts of *Schlunk* to their case. In *Schlunk,* the plaintiff brought a lawsuit against Volkswagen of America, Inc (VwoA) and Volkswagenwerk Aktiengesellschaft (VWAG), the German corporation that wholly owns and controls

VWoA. Plaintiff served process on VWAG by serving VwoA as *agent* for VWAG pursuant to the Illinois long-arm statute. *See id.* The Court found this mode of service to be appropriate based on the Illinois long-arm statute, which permits service of process on a foreign corporation by service on a domestic subsidiary. *See id.* at 706, 108 S.Ct. at 2106 (Ill.Rev.Stat., ch. 110, ¶ 2–209(a)(1)). The Supreme Court concluded that where a plaintiff serves a domestic corporation as the agent of the foreign corporation in compliance with state law and the due process clause, the Hague Convention does not apply. *See id.*

The plaintiffs have failed to note a key distinction between their case and the circumstances presented in *Schlunk.* The plaintiff in *Schlunk* did not attempt to transmit documents abroad, but instead served VwoA as the agent of VWAG. *See Sheets,* 891 F.2d at 537 (interpreting *Schlunk* ). Where the plaintiff actually attempts to send the pleadings to a corporation in a foreign nation, however, the plaintiff does become responsible for serving process under the mandates of the Hague Convention. In *Sheets,* the plaintiff brought suit against Yamaha Motor Corporation, U.S.A. (Yamaha U.S.A.) and Yamaha Motor Company, Ltd. (Yamaha Japan). *See id.* at 534. Plaintiff attempted to serve process on Yamaha Japan pursuant to the Louisiana long-arm statute. *See* La.Rev.Stat. Ann. § 13:3201 *et seq.* Yamaha Japan then attempted to quash service for failure to comply with the Hague Convention. *See Sheets,* 891 F.2d at 535. In determining that the plaintiff had not made proper service on Yamaha Japan, the court pointed out that, even if the Louisiana long-arm statute permits service on a foreign corporation by serving its domestic subsidiary, the plaintiff had never served Yamaha U.S.A. as agent for its parent, Yamaha Japan. *See id.* at 537. Instead, the plaintiff had attempted to mail a copy of the pleadings directly to Yamaha Japan. The court noted that the plaintiff's transmittal of documents to Japan had

triggered the application of Hague Convention procedures. *See id.*

■ *Sheets* is instructive here. In this case, there is no indication that the plaintiffs served Sig as the *agent* of Sauer.[3] In fact, regardless of whether Sig is the domestic subsidiary of Sauer, it is evident that the plaintiffs attempted to serve pleadings on Sauer by mailing the documents directly to Sauer in Germany. This transmittal of documents invokes the Hague Convention and requires strict compliance with its mandates. *See id.* Accordingly, having found that plaintiffs failed to serve Sauer in accordance with the Hague Convention and having found that service of process on Sig was not valid service on Sauer, the court concludes that plaintiffs have not properly served Sauer in this case.

### B. Motion to Dismiss Pursuant to Rule 12(b)(5)

Sauer asks this court to dismiss plaintiffs' case against them for improper service of process. The "general rule" is that "'when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant.'" *Gregory v. United States Bankruptcy Court,* 942 F.2d 1498, 1500 (10th Cir.1991) (quoting *Pell v. Azar Nut Co.,* 711 F.2d 949, 950 n. 2 (10th Cir.1983)); *see also* 5A Wright &

Miller, § 1354, at 289–90 (explaining that where the propriety of service is unclear, "the simplest solution ... is to quash process and allow plaintiff another opportunity to serve defendant"). At the same time, dismissal without opportunity to cure is appropriate where proper service would be futile. *See id.;* 5A Charles A. Wright & Arthur R. Miller, § 1354, at 289. Proper service would be futile, for instance, where this court would not have personal jurisdiction over the defendant.

■ The Louisiana long-arm statute permits the exercise of jurisdiction over a nonresident defendant as far as is permitted by due process. *See* La.Rev.Stat. § 13:3201(B). Our inquiry, therefore, is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional requirements. *See Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1361 (5th Cir.1990); La.Rev.Stat. Ann. § 13:3201(B). The Supreme Court has held that due process is satisfied when the defendant (1) has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state such that he could anticipate being haled into that state's courts and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473–76, 105 S.Ct.

---

**3.** Further, we reject plaintiffs' argument that Sig is the domestic subsidiary of Sauer. In *Green v. Champion,* 577 So.2d 249, 257–58 (La.Ct.App. 1st Cir.1991), the court laid forth non-dispositive factors that indicate whether two companies are really just one single business enterprise. They include: common stock ownership; common directors or officers; unified administrative control; common financing; inadequate capitalization; corporation paying the salaries and other expenses or losses of another corporation; receiving no business other than that given to it by its affiliated corporations; corporation using the property of another corporation as its own; noncompliance with corporate formalities; common employees; services rendered by the employees of one corporation on behalf of another corporation; common offices; cen-

tralized accounting; undocumented transfers of funds between corporations; unclear allocation of profits and losses between corporations; and excessive fragmentation of a single enterprise into separate corporations. *See id.*

The affidavit of Hermann Kleutzer, Executive Vice President of Sig Arms, Inc, makes clear that Sig and Sauer do not own corporate stock in each other. *See* Kleutzer Aff. Further, Sig and Sauer do not share expenses, profits, losses, office facilities, bookkeeping, equipment or other property. *See id.* These considerations lead us to the conclusion that Sig and Sauer are separate corporate entities. Service on Sig thus would not effectuate proper service on Sauer, regardless of whether the Rhodes had served Sig as the agent for Sauer.

2174, 2182–84, 85 L.Ed.2d 528, 540–42 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

In their petition for damages, plaintiffs assert that Sauer is authorized and is currently conducting business in Louisiana. This is sufficient to establish minimum contacts with Louisiana. We conclude that, should service be executed properly, this court would have personal jurisdiction over Sauer. Given that there is no indication that service on Sauer would be futile, the court determines that dismissal of plaintiffs' case against Sauer is inappropriate.

### III. Conclusion

Although plaintiffs have failed to effectuate valid service, the court determines that the preferable action is to quash service and DENY the motion to dismiss pursuant to Rule 12(b)(5). The plaintiffs are hereby given until 3 May 2000 to complete service upon Sauer.